## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **SIEMENS HEALTHCARE DIAGNOSTICS INC.,** | |
| Plaintiff, | Civil Action No. 4:10-cv-40124 |
| **v.** | |
| **ENZO LIFE SCIENCES, INC.,** | **ORAL ARGUMENT REQUESTED** |
| Defendant. | |

### PLAINTIFF SIEMENS HEALTHCARE DIAGNOSTICS INC.'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT ENZO LIFE SCIENCES, INC.'S MOTION TO DISMISS

Dated: October 15, 2010

Russell J. Barron
BBO # 677580
    barronr@pepperlaw.com
William D. Belanger
BBO #657184
    belangerw@pepperlaw.com
Lana A. Gladstein
BBO #648164
    gladsteinl@pepperlaw.com
Andrew H. DeVoogd
BBO # 670203
    devoogda@pepperlaw.com

**PEPPER HAMILTON LLP**
125 High Street - 15th Floor
Oliver Street Tower
Boston, Massachusetts 02110
Telephone: 617.204.5127
Facsimile:  617.204.5150

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION ................................................................................................ 1

II.     Statement of Relevant Facts............................................................................... 2

III.    LEGAL STANDARD.......................................................................................... 5

        A.      Federal Rule of Civil Procedure 12(b)(1):  Lack of Subject Matter Jurisdiction ... 5

        B.      Federal Rule of Civil Procedure 12(b)(6): Failure to State a Claim ...................... 6

IV.     ARGUMENT ....................................................................................................... 7

        A.      Jurisdiction in This Court Is Proper Because Siemens Has Standing to Pursue
                This Live Case or Controversy ............................................................................. 7

                1.      Section 146 Provides Procedural Rights Which Relieve Siemens of
                        Establishing Traditional Standing Requirements........................................ 7

                2.      Judicial Review of Interference Proceedings, Long Endorsed By
                        Congress, Implicates Matters of Public Concern and Thus Is Not Merely
                        Private Litigation Between the Parties........................................................ 9

                3.      This Matter Is Not Moot, Because the Issues Presented Are "Live"........ 11

                        (a)     Section 135(a) Obligates the Board to Decide Properly
                                Declared Interferences, and a Final Decision by the Board Is
                                Reviewable By a District Court ...................................................... 12

                        (b)     The Expiration of Siemens' Patent Did Not Moot the Errors
                                Made By the Board In Respect of Enzo's Violation of
                                Section 135(b)(1) .......................................................................... 17

        B.      Siemens Has Stated Legally Cognizable Claims for Relief, and Enzo's
                Rule 12(b)(6) Motion For Failure to State a Claim Must Be Denied .................. 17

V.      CONCLUSION.................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*3V, Inc. v. CIBA Specialty Chem. Corp.*, 587 F.Supp. 2d 641 (D. Del. 2008) ............12, 13, 14, 15

*Albert v. Kevex Corp.*, 729 F.2d 757 (Fed. Cir. 1984)...................................................................14

*Alberta Telecommunications v. Rambus, Inc.*, 2006 U.S. Dist. LEXIS 81093
   (N.D. Cal. Oct. 24, 2006)....................................................................................................15, 16

*Allen v. U.S. Ex Rel. Lowry*, 26 App. D.C. 8 (D.C. App. Ct. 1905) .........................................2, 9

*Animal Legal Defense Fund v. Quigg*, 932 F.2d 920 (Fed. Cir. 1991)........................................15

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ....................................................................................7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .........................................................................7

*Carlisle v. United States*, 517 U.S. 416 (1996)............................................................................6

*Conservolite v. Widmayer*, 21 F.3d 1098 (Fed. Cir. 1994)....................................................18, 19

*Estee Lauder Inc. v. L'Oreal, S.A.*, 129 F.3d 588 (Fed. Cir. 1997) ..............................................9

*Gallant v. City of Fitchburg*, 2010 U.S. Dist. LEXIS 83008 (D. Mass. Aug. 13, 2010)................7

*In re Gartside*, 203 F.3d 1305 (Fed. Cir. 2000)....................................................10, 12, 13, 14, 16

*Gen. Instrument Corp., Inc. v. Scientific-Atlanta, Inc.*, 995 F.2d 209 (Fed. Cir. 1993) ...............18

*Guinn v Kopf*, 96 F.3d 1419 (Fed. Cir. 1996) ..........................................................1, 10, 12, 13, 14

*Invitrogen Corp. v. President and Fellows of Harvard College,*
   578 F. Supp. 2d 248 (D.Mass. 2008) ........................................................................................18

*Mangual v. Rotger-Sabat*, 317 F.3d 45 (1st Cir. 2003) .................................................................6

*Mass. Indep. Certification, Inc. v. Johanns*, 486 F. Supp. 2d 105 (D. Mass. 2007) ......................8

*McGuigan v. Conte*, 629 F. Supp. 2d 76 (D. Mass. 2009)............................................................7

*Medichem, S.A. v. Rolabo, S.L.*, 353 F.3d 928 (Fed. Cir. 2003)..................................................14

*Morgan v. Daniels*, 153 U.S. 120 (1894).....................................................................................11

*Nulankeyutmonen Nkihtaqmikon v. Impson*, 503 F.3d 18 (1st Cir. 2007) .......................................8

**Page(s)**

*Perkins v. Kwon*, 886 F.2d 325 (Fed. Cir. 1989) ...................................................1, 10, 16

*Petrie et al. v. Walsh et al.*
   21 U.S.P.Q.2D (BNA) 2012 (B.P.A.I. September 30, 1991) .....................................12, 14, 17

*Ramirez v. Ramos*, 438 F.3d 92 (1st Cir. 2006) ............................................................6

*Rogers v. Jefferson-Pilot Ins. Co.*, 883 F.2d 324 (4th Cir. 1969) ...................................7

*Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1 (1st Cir. 2007) ...........................7

*Saint-Gobain Ceramics & Plastics, Inc. v. Yuhu Wang*,
   2008 U.S. Dist. LEXIS 53746 (D. Mass. June 27, 2008) ........................................6

*In re Van Geuns*, 946 F.3d 845 (Fed. Cir. 1991) ........................................................10

*Viqueira v. First Bank*, 140 F.3d 12 (1st Cir. 1998) .....................................................6

*Waterman v. Birbaum*, 53 U.S.P.Q.2d 2024 (B.P.A.I. 2000) .......................................15

**STATUTES**

35 U.S.C. §6 .....................................................................................................13

35 U.S.C. §102 ...................................................................................................4

35 U.S.C. §103 ...................................................................................................4

35 U.S.C. § 112 ..................................................................................................4

35 U.S.C. § 135(a) ...............................................................1, 3, 12, 14, 15, 16, 17

35 U.S.C. §135(b) ...............................................................................................4

35 U.S.C. § 146 ......................................................................................... passim

35 U.S.C. § 154(d) ..............................................................................................5

35 U.S.C. §253 ........................................................................................12, 13, 14

35 U.S.C. §291 ........................................................................................14, 15, 16

Pub. L. 93-596, §1, 88 Stat. 1949 (Jan. 2, 1975) .......................................................10

Pub. L. 98-622, §203, 98 Stat. 3387 (Nov. 8. 1984).....................................................10

Pub. L. 106-113, §4508 (1999)................................................................................17

**Page(s)**

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(1) ................................................................................ *passim*

Fed. R. Civ. P. 12(b)(6) ................................................................................ *passim*

37 C.F.R. §41.127 ........................................................................................ 12

H.R. Rep. No. 1923 (1952) .......................................................................... 10

S. Rep. No. 98-663, 98th Cong., 2d Sess., 18 (1984) ................................. 11

U.S. Patent No. 5,124,246 ............................................................................ *passim*

Plaintiff Siemens HealthCare Diagnostics, Inc., ("Siemens") respectfully submits this memorandum of law in opposition to Enzo Life Sciences, Inc.'s, ("Enzo") Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted.

## I.    INTRODUCTION

Enzo's motion to dismiss asks this court to ignore the plain language of 35 U.S.C. § 146. Section 146 unambiguously provides that "[a]ny party to an interference dissatisfied with the decision of the Board of Patent Appeals and Interferences on the interference, may have remedy by civil action…"    35 U.S.C. § 146.    The statute grants "*any party… dissatisfied with the decision*" of the Board of Patent Appeals and Interferences ("the Board") the right for judicial review of the Board's decision concerning priority and patentability.    If Enzo's motion is granted, Siemens would be denied its statutorily guaranteed right to challenge in this Court the erroneous decisions of the Board.

There is no prohibition in the statute, or in any judicial opinion, against maintaining a Section 146 action concerning an expired patent.    There is no precedent – and Enzo points to none – holding that a party's statutory right for review of a decision of the Board under Section 146 can be extinguished by the expiration of a patent after the interference had been properly declared under 35 U.S.C. § 135(a).    That is so because a Section 146 action is not merely private litigation between individuals, but a judicial review of an agency decision which settles not only the rights between the parties but also rights of concern to the public, namely, the issuance of valid patents.    *See Guinn v Kopf,* 96 F.3d 1419, 1422 (Fed. Cir. 1996); *Perkins v. Kwon,* 886 F.2d 325, 328-329 (Fed. Cir. 1989); *Bernardy v. Powell,* 2006 Pat. App. LEXIS 14, *8 (March 2, 2006).    This public interest is particularly true here where Enzo, the party that prevailed in the

interference due to the Board's error, serially delayed prosecution of its patent application for 23 years before requesting that the PTO declare an interference with Siemens' U.S. Patent No. 5,124,246 ("the '246 patent"), which at the time of the declaration of the interference had been issued and in the public domain for 14 years. (Compl. at 10, 15-17). If Enzo's motion is granted and the Board's decision stands unreviewed, in a direct affront to the American patent system, the public would be subjected to two successive 17-year patent terms covering the same subject matter. While that scenario has never before been addressed by a court, it was prophetically envisioned as an undesirable outcome more than 100 years ago in *Allen v. U.S. Ex Rel. Lowry*, 26 App. D.C. 8 (D.C. App. Ct. 1905). For all these reasons, jurisdiction in this Court is well-founded.

Siemens has also pled ample facts to state cognizable claims for relief on all of its causes of action. As a matter of law, this Court has the power to review issues that were properly raised before the Board – even those that were not considered by the Board. Enzo relies on mischaracterizations of the law to erroneously suggest the contrary, and by the measure of Rule 12(b)(6), Siemens has adequately stated claims upon which relief may be granted. As a result, Enzo's motion must fail.

## II.   STATEMENT OF RELEVANT FACTS

This is a civil action brought within the unique confines of 35 U.S.C. § 146,[1] seeking review of the erroneous judgment and decisions by the Board that were adverse to Siemens'

---

[1]Section 146 states in relevant part:

*Any party to an interference dissatisfied with the decision of the Board of Patent Appeals and Interferences on the interference, may have remedy by civil action*, if commenced within such time after such decision, not less than sixty days, as the Director appoints or as provided in section 141 of this title, unless he has appealed to the United States Court of Appeals for the Federal Circuit, and such appeal is pending or has been decided. (Emphasis added).

predecessor, Bayer Healthcare LLC ("Bayer"), in interference No. 105,489 against defendant Enzo. An interference[2] is a proceeding before the United States Patent and Trademark Office ("PTO") to determine which patent has priority for the technology in question. Enzo filed its U.S. patent application No. 08/479,995 ("the '995 application, *see* Compl., Ex. 2) on June 7, 1995. The '995 application, titled "Assay Method Utilizing Polynucleotide Sequences," purports to relate back to an application filed on May 5, 1983. Siemens' '246 patent, titled "Nucleic Acid Multimers and Amplified Nucleic Acid Hybridization Assays Using Same," resulted from application No. 07/340,031 filed on April 18, 1989. The '246 patent issued on June 23, 1992. (*See* Compl., Ex. 1).

On November 21, 2005, the PTO allowed (as patentable) all pending claims of Enzo's '995 application ("Enzo's Allowed Claims" refer to claims 283-362, 364, 365, 382, 383, 400, 401, 403, 404, 406, 407, 409-439, 441-505, 507, 508, 510, 511, and 528-547). (*See* Enzo's Request for Voluntary Publication of Application, ENZO000000053-202 at ENZO00000201, attached here to as Ex. A). On August 7, 2006, the PTO declared an interference between the '246 patent and Enzo's Allowed Claims. (Compl. at 10-14). In declaring interference, the PTO determined that Enzo's Allowed Claims and claims 39-41 and 43-56 of Siemens' unexpired '246 patent claim a common invention, namely nucleic acid hybridization assay of the '246 patent's claim 53. *Id.* The allegedly common invention, called Count 1, defines the invention contested

---

[2]Interferences are governed by 35 U.S.C. §135(a), which states in relevant part:

Whenever an application is made for a patent which, in the opinion of the Director, would interfere with any pending application, or with ***any unexpired patent***, an interference may be declared and the Director shall give notice of such declaration to the applicants, or applicant and patentee, as the case may be. The Board of Patent Appeals and Interferences shall determine questions of priority of the inventions and may determine questions of patentability. (Emphasis added).

in the interference.  *Id.*  The '246 patent was unexpired and in full force when this interference was declared.

Siemens[3] formally raised several issues to the Board in the interference, by requesting in "preliminary motions" that the Board permit it to fully brief certain motions regarding substantive issues in the interference.  *See* Compl. at ¶¶26-28.  The Board denied permission as to certain preliminary motions relating to, for example, Siemens' requests for judgment based on (1) the unpatentability of the '995 application under 35 U.S.C. §§102 and 103, and (2) Enzo's improper use of multiple dependent claims among the claims in the '995 application under 35 U.S.C. § 112 paragraph 5.  *See* Compl., Ex. 6 (Interference Paper No. 22).  Of the requested motions that Siemens was permitted to brief, the Board denied its motion to preclude a declaration of interference under 35 U.S.C. § 135(b) because none of Enzo's Allowed Claims was submitted within a year of the issuance of the '246 patent.  *See* Compl., Ex. 7 (Interference Paper No. 60).  Siemens also moved for prosecution laches to defeat Enzo's claim of priority. *See id*.  That motion was denied as the Board declined to reach the laches issue.

Siemens '246 patent expired in June 2009.  Despite the expiration, 35 U.S.C. § 286 entitles Siemens to bring an infringement lawsuit, seeking damages for up to six years after expiration of its patent, or up to June 2015.  Although the patent expired during the interference, Enzo never argued to the Board that the interference was thereby mooted.  Nor did the Board consider the expiration as a factor in determining the merits of the interference.

Despite the fact that Enzo filed its initial patent application more than 27 years ago, it was only on June 18, 2010, that Enzo filed a Request for Voluntary Publication of the '995

---

[3]Although Bayer was the active party at this stage of the interference proceedings, Siemens refers to the actions of its predecessor-in-interest as its own for the sake of clarity.

application, which served to publish the fact that Enzo obtained purportedly patentable claims. (*See* Enzo's Request for Voluntary Publication of Application at ENZO00000053-202, attached here to as Ex. A).  It has, therefore, withheld its application from the public for almost three decades.

Enzo's Allowed Claims, which were involved in the interference, were deemed patentable ("allowed") by the Patent Office, which means that the claims will issue in a granted patent unless this Court overturns the Board's decision.  Enzo's contention that its '995 application may not ever issue as a patent (Enzo Br. at 7) is inconsistent with the PTO and Enzo's actions.

Pursuant to 35 U.S.C. §146, as a party to an interference proceeding dissatisfied with the decision of the Board in respect of that interference, Siemens filed the instant civil action in this Court on July 9, 2010.  *See* Dkt. Entry No. 1.  On September 15, 2010, Enzo filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  *See* Dkt. Entry No. 15, Mot. at 1.

## III.   LEGAL STANDARD

### A.   Federal Rule of Civil Procedure 12(b)(1):  Lack of Subject Matter Jurisdiction

Fed. R. Civ. P. 12(b)(1) allows a party to move for dismissal of a claim for a court's lack of subject matter jurisdiction, which has been defined as "authority [of a court] to adjudicate the type of controversy involved in the action."  *Carlisle v. United States*, 517 U.S. 416, 434-35 (1996).  As Enzo bases its entire standing argument on the undisputed fact that the '246 patent expired on June 23, 2009, the challenge here is facial, and, as a result, the court "must construe the complaint liberally, treating all well-pleaded facts as true and drawing all reasonable inferences in favor of the plaintiffs."  *Saint-Gobain Ceramics & Plastics, Inc. v. Yuhu Wang*,

2008 U.S. Dist. LEXIS 53746 (D. Mass. June 27, 2008) (quoting *Viqueira v. First Bank*, 140 F.3d 12, 16 (1st Cir. 1998)).

Despite their similarity, there is a distinction between the doctrines of standing and mootness. *See Ramirez v. Ramos*, 438 F.3d 92, 100 (1st Cir. 2006). Whereas the party invoking federal jurisdiction must prove that it has standing, the party raising a mootness defense has the "heavy burden" of establishing the facts necessary to sustain that defense. *See id.* (citing *Mangual v. Rotger-Sabat*, 317 F.3d 45, 61 (1st Cir. 2003)). "To satisfy this burden, the challenger must show that, after the case's commencement, that intervening events have "wiped the slate clean" and blotted out the alleged injury, rendering the case moot. *Id.*

### B.    Federal Rule of Civil Procedure 12(b)(6): Failure to State a Claim

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Gallant v. City of Fitchburg*, 2010 U.S. Dist. LEXIS 83008, at *12-13 (D. Mass. Aug. 13, 2010) (citing *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007)). To prevail on this motion, Enzo must show that Siemens failed to plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). *See McGuigan v. Conte*, 629 F. Supp. 2d 76, 81 (D. Mass. 2009). Because a 12(b)(6) motion is intended to resolve the merits of a claim or applicability of defenses, it should be granted only "in very limited circumstances." *Rogers v. Jefferson-Pilot Ins. Co.*, 883 F.2d 324, 325 (4th Cir. 1969).

IV.   **ARGUMENT**

    A.   **Jurisdiction in This Court Is Proper Because Siemens Has Standing to Pursue This Live Case or Controversy**

Congress has explicitly provided Siemens procedural rights by way of Section 146 for a review of any decision of the Board below.  The Board, as it was obligated to do, reached a determination in a properly declared interference.  Siemens has the right to appeal that decision.

Further, this matter is not moot.  Siemens and others are still selling nucleic acid signal amplification diagnostic products.  *See* Compl. at ¶¶21-22.  If the erroneous decisions of the Board are remedied by this Court, Enzo's patent will not issue.  Unless this Court reviews the Board's decision, the public will be injured in that it will have to endure a second 17-year term on the same claimed invention.  Hence, this live case or controversy is properly before this Court.

    1.   **Section 146 Provides Procedural Rights Which Relieve Siemens of Establishing Traditional Standing Requirements**

Section 146 of Title 35 of the United States Code provides procedural standing rights, stating that "[a]ny party to an interference dissatisfied with the decision of the [Board] … may have remedy by civil action … ."  The plain language of the statute – which Enzo ignores – reveals that Congress intended to vest parties to an interference with the right for judicial review of the Board's decision.

"Where a statute affords procedural rights to a particular class of persons, the standing inquiry[4] is less demanding: 'The person who has been accorded a procedural right to protect his concrete interests can assert that right without meeting all the normal standards for redressability

---

[4]Traditional standing analysis requires proof that: (1) the plaintiff must have suffered an injury-in-fact, (2) there must be a causal connection between the injury and the conduct complained of, and (3) the injury must be redressable by a favorable decision.  *See Mass. Indep. Certification, Inc. v. Johanns*, 486 F. Supp. 2d 105, 113 (D.Mass. 2007) (quoting *Lujan*, 504 U.S. at 560-61).

and immediacy.'"   *Mass. Indep. Certification, Inc. v. Johanns*, 486 F. Supp. 2d 105, 113 (D.Mass. 2007) (quoting *Lujan*, 504 U.S. at 560-61).   *See Nulankeyutmonen Nkihtaqmikon v. Impson*, 503 F.3d 18, 27 (1st Cir. 2007) (noting that such plaintiffs receive "special treatment" with regard to the standing inquiry).   That is, persons who are conferred a procedural right by way of Congressional statute need only show that the statute in question was "designed to protect" some concrete personal interest, and that there is "some possibility" that the decision that harmed the party will be reconsidered.   *See Impson*, 503 F.3d at 28.

Here, several essential facts are apparent from the face of Siemens' Complaint.   First, Siemens was a party (and the successor-in-interest of a party) to an interference before the Board.   Second, Siemens is dissatisfied with the decision reached by the Board.   Third, Siemens timely commenced this Section 146 action.   Enzo does not challenge any of these facts that satisfy the statutory requirements to pursue judicial review, and potential reversal, of the decision of the Board that harmed Siemens.   Hence, Siemens is in the class of parties Section 146 was designed to protect, it possesses a concrete personal interest in correcting the erroneous decisions made below by the Board, and such decisions can be corrected by this Court.   Siemens thus has standing to prosecute this action in this Court.

Moreover, Enzo's contentions that its '995 application might not issue or that it may not sue Siemens are not only irrelevant to the analysis of whether Siemens has standing to prosecute this Section 146 action but are also belied by the facts summarized above.   The only thing that precludes Enzo to get its allowed '995 application issued as a patent and, consequently, commence suit against Siemens, is this Section 146 action seeking review of the Board's decision.

Furthermore, if, as Enzo contemplates, the Board's decision stands unreviewed and becomes final, Enzo's allowed claims will issue as a patent, injuring the public by forcing it to pay tribute to a patent for a second 17-year term.  In addition, Enzo's argument that Siemens could raise any affirmative defenses in a subsequent infringement suit (Enzo Br. at 2) rings hollow.  In fact, Siemens stands to lose (1) the venue selected and an opportunity to overturn the Board's decision; (2) the more favorable burden of proof in this action (i.e., preponderance of the evidence versus clear and convincing evidence in patent infringement actions); and (3) unbiased jury consideration of Siemens' defenses in a any later action since there will be prejudice to Siemens from a jury being told about the Board's unfavorable and unreviewed decision.

For all these reasons, Siemens has standing to proceed with this Section 146 action.

**2.    Judicial Review of Interference Proceedings, Long Endorsed By Congress, Implicates Matters of Public Concern and Thus Is Not Merely Private Litigation Between the Parties**

Section 146 provides a unique avenue for the hybrid appeal of an administrative decision on the one hand, and a trial de novo on the other.  *See Estee Lauder Inc. v. L'Oreal, S.A.*, 129 F.3d 588, 592 (Fed. Cir. 1997).  Section 146 intended to codify the long-standing practice of reviewing Patent Office's judgments.  *In re Van Geuns*, 946 F.3d 845, 847 (Fed. Cir. 1991).  In its 1952 revisions to Title 35, Congress expanded the right to judicial review by way of civil action to the patentee in an interference, which previously had only been enjoyed by the applicant.  *See, e.g., Allen v. United States ex rel. Lowry*, 26 App. D.C. 8, 14 (D.C. App. Ct. 1905), aff'd, *United States ex rel. Lowry v. Allen*, 203 U.S. 476 (1906).  The House Judiciary Committee emphasized that from an interference "the patentee has a right of appeal (sec. 141) *and* is given a right of [judicial] review by civil action (sec. 146)."  H.R. Rep. No. 1923, at 21 (1952) (emphasis added).  Subsequent revisions to the patent laws have all maintained this right to judicial review of decisions of the Board made during interference proceedings.  *See, e.g.,*

Pub. L. 93-596, §1, 88 Stat. 1949 (Jan. 2, 1975); Pub. L. 98-622, §203, 98 Stat. 3387 (Nov. 8, 1984).

Critically, this long-provided right of judicial review to parties dissatisfied with decisions by the PTO in an interference protects not just the parties against erroneous decisions of the Board, but also the public interest. *See Perkins v. Kwon*, 886 F.2d 325, 328-29 (Fed. Cir. 1989). Interference proceedings "settle[] not only the rights between the parties but also rights of concern to the public," namely that only valid patents issue. *Guinn v. Kopf*, 96 F.3d 1419, 1422 (Fed. Cir. 1996) (quoting *Perkins*, 886 F.2d at 328-29); *In re Gartside*, 203 F.3d 1305, 1318 (Fed. Cir. 2000).

Indeed, although a Section 146 action is instituted as a civil suit between two private parties, the proceeding is "principally one to review the decision by an executive branch tribunal empowered by statute to make legally binding determinations of patentabilty," an issue of central public importance. *See Bernardy v. Powell*, 2006 Pat. App. LEXIS 14, at *6-8 (B.P.A.I. March 2, 2006) (citing *Morgan v. Daniels*, 153 U.S. 120, 124 (1894)). Thus, implicating as it does rights of concern to the public, a civil action brought under Section 146 is not, as Enzo implies by its motion, solely private litigation between the parties. *Bernardy*, 2006 Pat. App. LEXIS 14, at *6-8. *See also* S. Rep. No. 98-663, 98th Cong., 2d Sess., 18 (1984) (noting that delays in interference proceedings are harmful to the public).

Enzo would have this Court ignore both the Congressional grant of a civil action to Siemens and the interests of the public, and treat the instant Section 146 action as though it were solely private litigation between two parties. This Court should not indulge Enzo's improper manipulation of the patent system.

The legal interpretation Enzo seeks this Court to adopt would be fundamentally unfair.  It would punish companies like Siemens, that timely obtain patents, by denying them review of the Board's decisions in properly declared interferences when their patents naturally expire, and reward companies like Enzo, that unduly delay prosecution of their applications until their competitors' patents expire, by allowing the Board's decision to be reviewed.  If the Board below had decided against Enzo, rendering the '995 application nugatory, Enzo, as a party to the interference dissatisfied with the decision of the Board, would be entitled to bring an action under Section 146.  Enzo would still be able to prosecute its grievance with the decision of the Board in this Court by way of Section 146 review.  Indeed, as a party to an interference dissatisfied with the decision of the Board in respect of that interference, Enzo would enjoy the right to a civil action to review such decision in precisely the same way Siemens enjoys the same right in the current situation.  Enzo's attempt to deny Siemens its statutory right bears no support in the law.

### 3.    This Matter Is Not Moot, Because the Issues Presented Are "Live"

Because the Board rendered a decision in a properly declared interference under 35 U.S.C. §135(a), which Siemens has chosen to appeal, this Court's review of the Board's decision is permitted under Section 146.  The mere happenstance of a patent's expiration during the pendency of interference proceedings does not divest the Board of the power to decide the interference.  *See Petrie et al. v. Walsh et al.,* 21 U.S.P.Q.2D (BNA) 2012 (B.P.A.I. September 30, 1991) (noting that "nothing contained in this opinion should be construed as suggesting that an interference declared between a pending application and an unexpired patent will be terminated by any means other than a judgment under 1.658(a) [now 37 C.F.R. § 41.127]).  Here, because the Board rendered a decision in a properly declared interference, this Court cannot be

precluded from reviewing such decision, as Section 146 guarantees such review.  Moreover, Enzo's motion must be denied for the additional and independent reason that Siemens' claims under 135(b)(1) are properly reviewable in this Court regardless of the expiration of the '246 patent, as the plain language of the measure reveals that its statute of repose effect is operative irrespective of whether the patent in question is active or expired.

(a)  **Section 135(a) Obligates the Board to Decide Properly Declared Interferences, and a Final Decision by the Board Is Reviewable By a District Court**

Enzo does not dispute that the Section 135(a) interference was properly declared below and that, even after Siemens' patent had expired in 2009, the Board had authority and jurisdiction to issue a decision and judgment that is the subject of this Section 146 review. Indeed, the law is clear that so long as a Section 135(a) interference was declared between a pending application and an *unexpired* patent, the Board is obligated to issue judgment.  *See* 35 U.S.C. §135(a); 35 U.S.C. §6; *Petrie*, 21 U.S.P.Q.2d (BNA) 2012; *Guinn et al. v. Kopf*, 96 F.3d 1419, 1421 (Fed. Cir. 1996) (holding that a voluntary disclaimer under 35 U.S.C. §253 does *not* divest the Board of jurisdiction or authority to reach a conclusion as to the properly declared § 135(a) interference); *In re Gartside*, 203 F.3d 1305, 1317 (Fed. Cir. 2000) (following *Guinn* and holding that withdrawal of party did not divest the Board of jurisdiction to decide the interference).  There is neither case law nor legislative history to support the proposition, which Enzo urges, that the expiration of a patent in a properly declared interference under § 135(a), divests this Court of jurisdiction and the patentee of its statutory right for a review of the Board's decision.  This Court's jurisdiction, and Siemens' right to appeal, are expressly granted by Section 146.

To support its erroneous argument that this Court lacks subject matter jurisdiction to hear a Section 146 action, Enzo principally relies on *3V, Inc. v. CIBA Specialty Chem. Corp.*, 587

F.Supp. 2d 641 (D. Del. 2008).  That case does not apply here not only because it is based on inapposite precedent of civil actions filed under 35 U.S.C. § 291 between two interfering patents, but also because its holding that a patentee's disclaimer of its patent under § 253 mooted the issues of priority and patentability and divested the court of jurisdiction is contrary to Federal Circuit precedent of *Guinn* and *Gartside.*

   *3V* is distinguishable and not instructive here as it involves a patentee's disclaimer of all claims of an issued patent under § 253 during a Section 146 action.  The court in *3V* observed that the patentee has no further right "to enforce the claims" disclaimed under § 253.  *See 3V, Inc.,* 587 F.Supp. 2d at 645 (citations omitted).  Disclaimer under § 253 is not the same as a natural expiration of a patent.  Siemens has never disclaimed its patent and, thus, has a live interest at stake in seeking a judicial review of the Board's decision.  Specifically, if the Board's decision is reversed, Siemens can enforce its patent.  For example, Siemens is entitled under 35 U.S.C. § 286 to seek damages for any infringement that occurs as late as June 2015, which is six years after the patent's expiration.  If the Board's rulings are not corrected, Siemens' interest in its patent would be called into question; in addition, as described above, nothing would stop Enzo from obtaining a patent and attempting to enforce it against Siemens' ongoing business. Siemens, therefore, has a live interest in having this Court review and remedy the Board's interference rulings.

   In *3V*, Judge Farnan also noted that "the parties did not identify, and the Court did not locate, any case specifically considering the issue of what kind of case or controversy is needed to sustain a §146 action."  587 F.Supp. 2d at 646.  Thus, Judge Farnan looked to Section 291 actions for guidance.[5]  But a Section 291 action is not analogous to a Section 146 action in any

---

[5]Section 291 provides in full:

(continued...)

respect.  Unlike a Section 146 action, a Section 291 action is not a statutorily mandated judicial review of an administrative agency's decision.  Instead, Section 291 provides a private cause of action to one patent owner against another patent owner solely to eliminate interference between their patents.  *See Medichem, S.A. v. Rolabo, S.L.*, 353 F.3d 928, 930 (Fed. Cir. 2003); *see also* 35 U.S.C. § 291.  The threshold jurisdictional requirement for §291 actions is the existence of interference-in-fact between two issued patents.  *See Albert v. Kevex Corp.,* 729 F.2d 757, 760-761 (Fed. Cir. 1984) (holding that "the court has no jurisdiction under § 291 unless interference is established.").  Thus, a disclaimer of the interfering claims under § 253 or expiration of a patent divests the court of subject matter jurisdiction in actions under § 291.[6]  *Id.*

Moreover, Judge Farnan's observation that "CIBA identifies no dispute whatsoever that it continues to have with 3V" underscores the difference between actions under Section 291, which settle private rights, and actions under 146, which are not simply private litigation between individuals but a judicial review of an agency decision which settles not only the rights between the parties but also rights of concern to the public.  *See Perkins*, 886 F.2d at 328-29; *Guinn*, 96 F.3d at 1422; *In re Gartside*, 203 F.3d at 1318; *Bernardy,* 2006 Pat. App. LEXIS 14, *8.  The reasoning of those cases applies here: there is a public interest in finally resolving Section 135(a)

_____

(continued...)

The owner of an interfering patent may have relief against the owner of another by civil action, and the court may adjudge the question of the validity of any of the interfering patents, in whole or in part.  The provisions of the second paragraph of section 146 [concerning venue] of this title shall apply to actions brought under this section.  35 U.S.C. §291.

[6] In contrast to interferences under §291, in a properly declared interference under §135(a) between a *pending patent application* and an *unexpired patent*, a disclaimer of the interfering claims under §253 or withdrawal of a party to the interference does *not* divest the Board of jurisdiction to decide the interference.  *See Guinn*, 96 F.3d at 1421-22; *In re Gartside*, 203 F.3d at 1317.  In fact, it is only when the patent has expired or lapsed *before* the interference is declared under §135(a) that the Board has no subject matter jurisdiction to maintain the interference.  *See Petrie,* 21 U.S.P.Q.2D (BNA) 2012.  Therefore, the basis for maintaining an interference action under §291 in district courts bears no similarity to the basis and purpose of interference proceedings under § 135(a) before the Board and the statutory grant of review of those decisions under § 146 as described above.

interference disputes even when a patentee disclaims or dedicates its claims to the public or when a patent expires during a properly declared Section 135(a) interference, which Siemens posits includes allowing the Section 146 action to occur.

Furthermore, the Delaware District Court's decision in *3V* does not apply here and, in any case, would not bind this Court. The Federal Circuit was never given the opportunity to review the decision in *3V, Inc. v. CIBA*; and the case has to date never been cited by any other court for any reason. Nor is *Waterman v. Birbaum* helpful to Enzo as that case merely stands for the proposition that the Board lacks subject matter jurisdiction to declare an interference under § 135(a) between an *abandoned patent application* and an unexpired patent. 53 U.S.P.Q.2d 2024 (B.P.A.I. 2000) (holding "[s]ince the Waterman application was abandoned as of the date the interference was declared, it follows that the board lacked subject matter jurisdiction over the interference.").

In fact, none of the cases Enzo cites to support its jurisdiction argument are applicable or instructive. For example, in *Animal Legal Defense Fund v. Quigg*, 932 F.2d 920 (Fed. Cir. 1991), the Federal Circuit concluded – in stark contrast to the Section 146 context and completely irrelevant here – that a third party lacks standing to intervene in the prosecution of certain patent applications because the law confers no right to non-applicants to object the prosecution of patent applications of others.

Likewise, *Alberta Telecommunications v. Rambus, Inc.*, 2006 U.S. Dist. LEXIS 81093 (N.D. Cal. Oct. 24, 2006) is not instructive as it is another action under §291 which has no applicability whatsoever to this §146 action. In *Alberta,* the District Court for the Northern District of California dismissed plaintiff Alberta's §291 action for lack of subject matter jurisdiction because defendant Rambus' patent expired. 2006 U.S. Dist. LEXIS 81 at *8-9. As

described above, the threshold jurisdictional requirement for §291 actions is based solely on the existence of interference-in-fact between the two patents. The court found that the expiration of Rambus' patent vested the plaintiff with the allegedly interfering claims, thus removed any case or controversy regarding the interference between the two patents. *Id.* In stark contrast to *Alberta*, this Court has subject matter jurisdiction under § 146 to review the Board's decision in interference declared under § 135(a) not only because the plain language of the statute vests this Court with jurisdiction but because there is live case or controversy regarding whether the Board's decision is correct and, for the reasons articulated above, both Siemens and the public stand to be injured if the Boards' decision is not corrected.

If the Board must determine a properly declared interference even if a party disclaims all involved claims or withdraws from the interference completely, it follows that the Board must also reach a conclusion as to a properly declared interference when the involved patent expires during the pendency of the interference. Indeed, the Board decided the interference here despite the fact that the '246 patent expired several months before the Board's decision was issued. Coupled with Section 146's facial guarantee that decisions of the Board in respect of properly declared interferences may be reviewed in district court, it follows that a patent's expiration does not strip a federal district court of jurisdiction to review the decision of the Board under 35 U.S.C. § 146.

To conclude otherwise would be to ignore the logical interplay between Board's role in deciding interferences and the district courts' unique role in reviewing such decisions. Section 146 was enacted to provide a means for review of the Board's decision in an interference, a fact that is apparent from the plain language of the statute and from related historical sources. As the Board plays a major role in its determination of interferences in "settl[ing] not only the rights

-16-

between the parties but also rights of concern to the public," *Perkins v. Kwon*, 886 F.2d 325, 328-29 (Fed. Cir. 1989), the interests of the public should not be ignored here.  *See also In re Gartside*, 203 F.3d at 1310 (Board should resolve issues before it for sake of public interest).

### (b)   The Expiration of Siemens' Patent Did Not Moot the Errors Made By the Board In Respect of Enzo's Violation of Section 135(b)(1)

Even if the balance of the issues placed before this Court by Siemens' Complaint were mooted by the expiration of the '246 patent, which, for the reasons already stated, they were not, Enzo's motion must be denied for the reason, if no other, that Siemens' claims under Section 135(b)(1) are properly reviewable in this Court.  Section 135(b)(1)[7] states in relevant part: "[a] claim which is the same as, or for the same or substantially the same subject matter as, a claim of *an issued patent* may not be made in any application unless such a claim is made prior to one year from the date on which the patent was granted."  (Emphasis added.)  Section 135(b)(1) is thus silent as to the status of the relevant patent, by comparison to Section 135(a), which specifies that the patent must be "unexpired" upon declaration of the interference.  *See Petrie*, 21 U.S.P.Q.2D (BNA) 2012.  Thus, the language of these two subsections reveals that an expired patent can form the basis of a Section 135(b)(1) analysis.  As such, the decision of the Board below cannot have been mooted by the expiration of the '246 patent.

### B.   Siemens Has Stated Legally Cognizable Claims for Relief, and Enzo's Rule 12(b)(6) Motion For Failure to State a Claim Must Be Denied

By submitting preliminary motions, Siemens properly raised before the Board the priority-related issues it seeks this Court to review.  Enzo's contrary position is inaccurate and,

---

[7]Because §135(b)(2) only applies to applications filed on or after November 29, 2000, this subsection does not apply to the '995 application.  *See* Pub. L. 106-113, §4508 (1999).

therefore, its contention that Siemens failed to state a claim upon which relief can be granted must be rejected.

Enzo mentions in passing in the introduction to its memorandum in support of its motion to dismiss that Siemens has failed to state a claim for review of the Board's failure to address both "patentability" and "enforceability."  To the extent this ambiguous statement can be taken as directed to Siemens' claim relating to unenforceability based on prosecution laches, Enzo has altogether failed to advance, develop or support the argument with either fact or law elsewhere in its motion papers.  As a result, Enzo's motion to dismiss Siemens' prosecution laches claim must fail, and this Court should deny the motion on these grounds alone.

Section 146 provides a right of civil action to dissatisfied parties to an interference to review the decisions of the Board.  In *Conservolite v. Widmayer*, 21 F.3d 1098, 1102 (Fed. Cir. 1994) ("*Conservolite*"), relied upon by Enzo, the Federal Circuit made clear that it is adequate to raise issues to the Board through preliminary motions:

> [i]n order for an issue to be *raised* adequately so that it qualifies for consideration in a §146 proceeding, the issue should have been *raised* as specified in the PTO's interference rules, for example, through *preliminary motions*, motions to correct inventorship, belated motions delayed for good cause, or opposition to these motions.

*Id.* (emphasis added) (citing *Gen. Instrument Corp., Inc. v. Scientific-Atlanta, Inc.*, 995 F.2d 209, 214 (Fed. Cir. 1993)).  *See Invitrogen Corp. v. President and Fellows of Harvard College*, 578 F. Supp. 2d 248, 252-53 (D.Mass. 2008) (issues not "raised" before the Board are waived before the district court in Section 146 action) (citing *Conservolite*, 21 F.3d at 1102).  Enzo relies on *Conservolite* for the proposition that Siemens has failed to state a legally cognizable claim for relief due to the fact that the Board did not "address" matters of prior art or multiple dependent claims and that a "complete presentation" as to these issues was not made to the Board.  *See* Dkt. Entry No. 16, Enzo Mot. at 9.  This is a misstatement of the law.

The Federal Circuit in *Conservolite* did not conclude that because a certain issue had not been "addressed" by the Board, the district court abused its discretion in considering the issue on Section 146 review. *See Conservolite*, 21 F.3d at 1102-03. Rather, it concluded that an issue that had not been "raised" before the Board according to the rules of the PTO could not be pursued by way of a 146 action. But Siemens did not raise any "new issue" in its complaint such that this Court is precluded from reviewing it.

Pursuant to the rules of the PTO, Siemens filed preliminary motions as to both the prior art issue and the multiple dependencies issue, seeking the ability to fully develop arguments before the Board on these topics. *See* Dkt. Entry No. 1, Compl. at ¶¶27-28. Although the Board rejected these requests, it cannot be said that because "Siemens was not authorized" to fully address such issues it failed altogether to raise them. *See* Dkt. Entry No. 16, Enzo Mot. at 8. Indeed, the erroneous decision by the Board to preclude full consideration of either of these preliminary motions is among the issues that Siemens now requests this Court to review.

To the extent the Board declined to "address" the issues properly raised by way of preliminary motions, that question is irrelevant to whether Siemens has here stated claim upon which relief may be granted. *See id.* The undisputed fact is that Siemens "raised" before the Board the issues it seeks this Court to review pursuant to Section 146, and, for the reasons stated above, this is sufficient to state a legally cognizable claim for relief. Enzo's 12(b)(6) motion to dismiss should be denied.

## V.    **CONCLUSION**

For the foregoing reasons, Enzo's motion to dismiss must be denied in its entirety. Siemens has standing to pursue its claims before this Court, and the fact that the '246 patent has expired did not moot this case or controversy. Siemens has also satisfied its pleading obligations and has stated claims upon which relief may be granted.

| Dated: October 15, 2010 | Respectfully submitted, |
|---|---|
| | /s/ Russell J. Barron<br>Russell J. Barron<br>BBO # 677580<br>    barronr@pepperlaw.com<br>William D. Belanger<br>BBO #657184<br>    belangerw@pepperlaw.com<br>Lana A. Gladstein<br>BBO #648164<br>    gladsteinl@pepperlaw.com<br>Andrew H. DeVoogd<br>BBO # 670203<br>    devoogda@pepperlaw.com<br><br>**PEPPER HAMILTON LLP**<br>125 High Street - 15th Floor<br>Oliver Street Tower<br>Boston, Massachusetts 02110<br>Telephone: 617.204.5127<br>Facsimile:  617.204.5150 |

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1

Pursuant to Local Rule 7.1(A)(2), I certify that counsel for Siemens Healthcare Diagnostics, Inc., conferred with counsel for Enzo Life Sciences, Inc. ("Enzo") and has attempted in good faith to resolve or narrow the issues presented by this motion.

/s/ Russell J. Barron

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on October 15, 2010.

/s/ Russell J. Barron