**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
                                                        )
SIEMENS HEALTHCARE                 )
DIAGNOSTICS, INC.,                        )
                                                        )
              Plaintiff,                          )          **Civil No.**
                                                        )          **10-40124-FDS**
              v.                                     )
                                                        )
ENZO LIFE SCIENCES, INC.,            )
                                                        )
              Defendant.                        )
_____)

**MEMORANDUM AND ORDER**
**ON DEFENDANT'S MOTION TO DISMISS**

**SAYLOR, J.**

        This is an appeal of a decision of the United States Patent and Trademark Office ("PTO")

Board of Patent Appeals and Interferences ("BPAI").  On August 7, 2006, the PTO declared an

interference between various claims of U.S. Patent 5,124,246 (currently owned by plaintiff

Siemens Healthcare Diagnostics, Inc.) and U.S. Patent Application No. 08/479,995 (filed by

defendant Enzo Life Sciences, Inc.).  It then determined that Enzo was the first to invent the

technology claimed by both parties, granting Enzo exclusive rights to a patent for that technology

and rendering Siemens's patent unenforceable.  Unhappy with the BPAI's decision, Siemens

sought review by this Court, which has subject-matter jurisdiction pursuant to 35 U.S.C. § 146

and 28 U.S.C. § 1331.

        Enzo has moved to dismiss, asserting that the case is moot and that the complaint has

failed to state a claim under Fed. R. Civ. P. 12(b)(6).  For the reasons given below, the motion

will be denied.

## I.    Statutory and Factual Background

This case concerns an invention for a special type of assay, or test, involving "nucleic acid hybridization."  (Compl. ¶ 12).[1]  Both parties claim exclusive rights to a patent for this assay. Before turning to the facts, a brief review of the relevant statutory scheme is warranted.

In the United States, only one patent is permitted for a given patentable invention.  When two parties claim the same invention, the right to the patent turns on which party is the first to invent, or has "priority of invention" over, the claimed subject matter.  This is frequently determined in an "interference proceeding" before the BPAI.[2]

### A.    Interference Proceedings before the PTO

The Director of the PTO is authorized to declare an interference between different patents and/or patent applications when they appear to claim the same invention.  35 U.S.C. § 135.  Once an interference is declared, § 135 provides the BPAI with jurisdiction to conduct a proceeding to determine priority of invention.  Section 135(a) provides:

> Whenever an application is made for a patent which, in the opinion of the Director, would interfere with any pending application, or with any unexpired patent, an interference may be declared . . . . The [BPAI] shall determine questions of priority of the inventions and may determine questions of patentability.  Any final decision, if adverse to the claim of an applicant, shall constitute the final refusal by the [PTO] of the claims involved, and the Director may issue a patent to the applicant who is adjudged the prior inventor. . . .

35 U.S.C. § 135(a).  Under the statute, the BPAI also has the power to determine the validity (or "patentability") of the invention.[3]  Once an interference is properly declared, a priority

---

[1] The exact nature and function of this invention is not relevant to the present motion.

[2] A patent owner may also initiate a priority-of-invention determination by filing suit in federal court against the owner of an allegedly interfering patent.  *See* 35 U.S.C. § 291.

determination is mandatory.  *See Guinn v. Kopf*, 96 F.3d 1419, 1421-22 (Fed. Cir. 1996).  A

patentability determination, if fairly raised and fully developed before the BPAI, is "nearly

mandatory."  *In re Gartside*, 203 F.3d 1305, 1317 (Fed. Cir. 2000); *see Perkins v. Kwon*, 886

F.2d 325, 328-29 (Fed. Cir. 1989) (interpreting the language "may determine questions of

patentability" to permit discretion only where patentability is not placed at issue); *see also*

*Koninklijke Philips Elecs. N.V. v. Cardiac Sci. Operating Co.*, 590 F.3d 1326, 1334 (Fed. Cir.

2010) (citing *Perkins* for this proposition).  Furthermore, the Federal Circuit has held that the

BPAI should determine priority and patentability even after a party to the interference no longer

has a personal stake in the outcome.  *Gartside*, 203 F.3d at 1317; *Guinn*, 96 F.3d at 1420-21.[4]

This continuing jurisdiction is based in part on the PTO's duty to administratively resolve rights of

concern to the public:

> The [BPAI], by resolving both priority and patentability when these questions are
> fully presented, settles not only the rights between the parties but also rights of
> concern to the public.  The public interest in the benefits of a patent system is best
> met by procedures that resolve administratively questions affecting patent validity
> that arise before the PTO.  To do otherwise is contrary to the PTO's mission to
> grant presumptively valid patents, and thus disserves the public interest.

*Gartside*, 203 F.3d at 1318 (quoting *Perkins*, 886 F.2d at 328-29) (internal citations omitted);

*Guinn*, 96 F.3d at 1422 (same).

---

[3] For a detailed discussion of the BPAI interference process, *see Human Genome Scis., Inc. v. Amgen, Inc.*, 552 F. Supp. 2d 466, 467 (D. Del. 2008).

[4] In *Guinn v. Kopf,* Guinn attempted to terminate a proceeding before the BPAI by filing a statutory disclaimer of all claims involved in the interference.  96 F.3d at 1420.  Because the disclaimer eliminated all of Guinn's interest in the disputed invention, he argued that no controversy existed between the parties and that the BPAI therefore lacked jurisdiction.  *Id.*  The BPAI disagreed, entering judgment against him.  Interpreting 35 U.S.C. § 135(a), the Federal Circuit affirmed, holding that the BPAI must decide issues of priority as long as jurisdiction was proper at the time the interference was declared.  *Id.* at 1421-22.  Thus, the existence of a "controversy" between interested parties was not a continuing requirement for jurisdiction under § 135(a).  The Federal Circuit affirmed and expanded this logic in *In re Gartside*, 203 F.3d at 1317, where it held that the BPAI retained jurisdiction to decide issues patentability as well as priority despite the absence of a "controversy."  *Id.*

B.     __The Role of the Federal District Courts__

Once the BPAI has rendered a final decision, an aggrieved party may seek review of that

decision in federal district court.  The statute provides in relevant part:

> Any party to an interference dissatisfied with the decision of the [BPAI] on the
> interference, may have remedy by civil action . . . .  Such suit may be instituted
> against the party in interest as shown by the records of the [PTO] at the time of the
> decision complained of, but any party in interest may become a party to the action.
> . . . Judgment of the court in favor of the right of an applicant to a patent shall
> authorize the Director to issue such patent on the filing in the [PTO] of a certified
> copy of the judgment and on compliance with the requirements of law.

35 U.S.C. § 146.  "District court review of an interference proceeding under section 146 is an

equitable remedy of long standing."  *Gen. Instrument Corp. v. Scientific-Atlanta, Inc.*, 995 F.2d

209, 214 (Fed. Cir. 1993).  An action in district court pursuant to § 146 takes the form of a

"hybrid appeal/trial *de novo* proceeding in which the PTO record is admitted on motion of either

party, but it may be supplemented by further testimony."  *Human Genome Scis., Inc. v. Amgen,*

*Inc.*, 552 F. Supp. 2d 466, 468 (D. Del. 2008) (quoting *Gen. Instrument*, 995 F.2d at 212).

Although it has some aspects of a trial, a § 146 action is not a new proceeding, but rather an

appeal of the BPAI's interference determination.  "[T]he interference proceeding is a multi-part

action with appeal as of right, starting in the PTO and culminating in court.  The civil action

authorized by § 146 is not a new claim, but an authorized phase of the interference proceeding

that is conducted by the PTO and is subject to judicial review."  *Vas-Cath, Inc. v. Curators of the*

*Univ. of Mo.*, 473 F.3d 1376, 1382 (Fed. Cir. 2007); *Rexam Indus. Corp. v. Eastman Kodak Co.*,

182 F.3d 1366, 1370 (Fed. Cir. 1999) (A § 146 action is "derivative of the interference conducted

in the PTO.").

As an Article III tribunal, the district court remains bound by constitutionally-mandated

justiciability requirements when reviewing BPAI decisions.  "[N]o statute could authorize a federal court to decide the merits of a legal question not posed in an Article III case or controversy.  For that purpose, a case must exist at all the stages of appellate review."  *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 21 (1994); *see 3V, Inc. v. CIBA Specialty Chems. Corp.*, 587 F. Supp. 2d 641 (D. Del. 2008) (holding that court lacked jurisdiction to consider a § 146 appeal where no "case or controversy" existed).

Having reviewed the statutory scheme, the Court turns to the facts giving rise to the present action.

### C.    Factual Background

On August 7, 2006, the PTO declared an interference between Siemens's U.S. Patent 5,124,246 (the "'246 patent") and Enzo's U.S. Patent Application No. 08/479,995 (the "'995 application").  (Compl. ¶ 10).[5]  At the time the interference was declared, the '246 patent was nearing the end of its 17-year statutory term, while Enzo's claimed invention had been pending in the application process for over 20 years.[6]

During the interference proceeding, the BPAI made a number of rulings that Siemens now challenges.  First, the BPAI declined to allow briefing on Siemens's challenges to the patentability of Enzo's claims because it determined that doing so "would be a significant distraction from the priority determination."  (*Id.* Ex. 5 at 3).  Second, the BPAI declined to allow briefing on an

---

[5] At the time of the interference, the '246 patent was owned by Bayer Healthcare, LLC; however, it has since been purchased by Siemens.  For ease of understanding, the Court will refer to the owner of the '246 patent as "Siemens."

[6] Siemens contends that Enzo intentionally delayed bringing its application to completion so that it could collect royalties from the entities (including Siemens) who now make extensive use of the technology.  (Compl. ¶¶ 20-22).  Whether this assertion has any merit is not relevant to the motion presently before the Court.

alleged multiple-dependency problem in some of Enzo's claims because "[r]esolving the problem is not necessary to determine priority." (*Id.* Ex. 5 at 3). Third, the BPAI considered, and rejected, Siemens's contention that Enzo failed to comply with 35 U.S.C. 135(b)(1). (*Id.* Ex. 6 at 10).[7] Fourth, the BPAI rejected Siemens's motion for a decision that no interference-in-fact existed, determining that it was contingent on Siemens's failed § 135(b)(1) motion. (*Id.* Ex. 6 at 10). Finally, the BPAI considered, and rejected, Siemens's assertion that Enzo's claims were unenforceable under the doctrine of prosecution laches. (*Id.* Ex. 6 at 31; Def. Mot. Dismiss at 3-4).

Siemens did not contest Enzo's earlier filing date. (Compl. Ex. 7 at 2). Consequently, after rejecting the above motions, the BPAI ruled on February 22, 2010 that Enzo's '995 application had priority of invention. (*Id.* Ex. 7 at 2).

On July 9, 2010, Siemens filed the present action pursuant to 35 U.S.C. § 146 seeking review of all of the BPAI's decisions that were adverse to it. Enzo responded by filing a motion to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

The '246 patent expired in June 2009, during the interference proceeding and before the present action was filed. (Pl. Opp'n at 4).

## II.   <u>Analysis</u>

### A.   <u>The Motion to Dismiss for Lack of Subject-Matter Jurisdiction</u>

Defendant contends that the expiration of plaintiff's patent deprives this Court of subject-

---

[7] Section 135(b)(1) provides that "[a] claim which is the same as, or for the same or substantially the same subject matter as, a claim of an issued patent may not be made in any application unless such a claim is made prior to one year from the date on which the patent was granted." It is "intended to be a statute of repose, limiting the time during which an interference may be declared so that the patentee might be more secure in his property right." *Berman v. Housey*, 291 F.3d 1345, 1351 (Fed. Cir. 2002) (internal citations omitted).

matter jurisdiction under Article III's "case or controversy" requirement.  It contends that plaintiff lacks standing to bring this appeal and that the case is moot.  For the reasons given below, the Court finds that the doctrine of standing does not apply and that the case is not moot.

### 1.    <u>Standing</u>

Defendant contends that plaintiff lacks standing to bring this appeal because its patent expired in 2009.  Plaintiff contends that the statutory scheme explicitly grants standing to appeal.  The parties, however, misapply the doctrine of standing to this case.  "An inquiry into standing must be based on the facts as they existed when the action was commenced." *Ramirez v. Sanchez Ramos*, 438 F.3d 92, 97 (1st Cir. 2006); s*ee Friends of the Earth*, 528 U.S. at 180 (entity's standing to bring suit determined "at the outset of the litigation.").  After the litigation has commenced, the doctrine of mootness applies.  *See Friends of the Earth*, 528 U.S. at 189-90; *Ramirez*, 438 F.3d at 97.

An action under § 146 is not a new claim; rather, it is an appeal of a determination of the BPAI.  *Vas-Cath*, 473 F.3d at 1382.  Under the circumstances, the proper question is therefore whether the expiration of defendant's patent has rendered these proceedings moot.  *See Friends of the Earth*, 528 U.S. at 180; *Air Transp. Ass'n of America v. Dep't of Transp.*, 129 F.3d 625, 616 (D.C. Cir. 1997) (applying doctrine of mootness to appeal from administrative decision).[8]  The doctrine of standing has no relevance.

---

[8] The parties' conflation of standing and mootness is not entirely surprising, as decisions prior to *Friends of the Earth* often described mootness as "the doctrine of standing set in a time frame." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997); *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980).  The majority disavowed that approach in *Friends of the Earth*.  528 U.S. at 190 ("The Constitution's case-or-controversy limitation on federal judicial authority underpins both our standing and our mootness jurisprudence, but the two inquiries differ.").

2.     **Mootness**

a.     **Standard of Review**

"A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 288 (2000) (internal citations and textual alterations omitted); *Overseas Military Sales Corp. v. Giralt-Armada*, 503 F.3d 12, 17 (1st Cir. 2007).  "When, as now, a plaintiff has initial standing to bring a particular claim, a federal court is duty bound to dismiss the claim as moot if subsequent events unfold in a manner that undermines any one of the three pillars on which constitutional standing rests." *Ramirez*, 438 F.3d at 100; *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992).  In *Lujan v. Defenders of Wildlife*, the United States Supreme Court outlined the "three pillars" of constitutional standing:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.  Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

504 U.S. 555, 560-61 (1992) (internal citation and textual alterations omitted).

Although the constitutional analysis is the same, mootness differs from standing in several important respects.  First, the burden of establishing mootness is on the party raising it as a defense, rather than the party invoking federal jurisdiction.  *Ramirez*, 438 F.3d at 100.  "To satisfy this burden, the challenger must show that, after the case's commencement, intervening events have blotted out the alleged injury and established that the conduct complained of cannot

8

reasonably be expected to recur." *Id.*

Second, the different posture of the litigation in a mootness analysis raises a number of prudential considerations that may cause the Court to entertain disputes that would not survive a standing analysis.  As a result, courts have regularly considered cases where the harm has ceased to exist after the litigation commenced (for example, where a litigant voluntarily ceases the offending behavior after being sued) or where the harm has ceased to be redressable (for example, where a type of harm is so short-lived that it regularly resolves during the pendency of litigation). *See Friends of the Earth*, 528 U.S. at 190-191; *see, e.g.*, *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 288-89 (defendant city's removal of objectionable provision from ordinance did not moot case because city could reenact the provision at a later point); *Roe v. Wade*, 410 U.S. 113, 125 (1973) ("[W]hen, as here, pregnancy is a significant fact in the litigation, the normal 266-day human gestation period is so short that the pregnancy will come to term before the usual appellate process is complete.  If that termination makes a case moot, pregnancy litigation seldom will survive much beyond the trial stage, and appellate review will be effectively denied.").  Courts have similarly considered the impact of dismissal on the litigants, the potential for a litigant's manipulation of jurisdiction, and economic efficiency.  *See, e.g.*, *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 (2001) (considering the impact of a dismissal on litigants); *Erie*, 529 U.S. at 288 (considering the possibility of a litigant's manipulation of jurisdiction to avoid review); *Friends of the Earth*, 528 U.S. at 191-92 ("[B]y the time mootness is an issue, the case has been brought and litigated, often [] for years.  To abandon the case at an advanced stage may prove more wasteful than frugal.").

Under this analysis, the defendant seeking to avoid jurisdiction on mootness grounds bears

a "heavy burden." *Ramirez*, 438 F.3d at 100. To establish that a case is moot, defendant must first show that plaintiff no longer suffers an "injury in fact," that "causation" no longer exists, or, if there is an injury, that it is not redressable by the Court. Defendant must also show that no additional grounds for retaining jurisdiction apply.

### b.    Analysis

Defendant first contends that the expiration of the '246 patent has eliminated any injury to plaintiff.[9] Because plaintiff no longer has the right to enforce its patent against new infringers, defendant asserts that the prosecution and possible approval of its own patent, even though it is for the same invention, does not harm plaintiff. Defendant also asserts that plaintiff's harm is not redressable because a determination that plaintiff has priority of invention would not restore rights that have already expired as a matter of course. Instead, defendant asserts, the only non-speculative effect of a reversal would be to harm defendant.

Normally, an injury must be "actual or imminent" in order "to reduce the possibility that a court might unconstitutionally render an advisory opinion by 'deciding a case in which no injury would have occurred at all.'" *Florida Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996) (quoting *Lujan*, 504 U.S. at 564 n. 2). The redressability element requires that the requested relief directly redress the injury alleged. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 105-09 (1998). Plaintiff must establish that it is "likely," as opposed to merely "speculative," that its claimed injuries will be redressed by a favorable decision. *Lujan*, 504 U.S. at 560.

---

[9] Defendant marshals many of these arguments in support of finding a lack of standing. Because the two analyses take a similar view of injury, causation, and redressability, the Court responds to them in the context of the mootness discussion.

Under this standard, plaintiff has suffered an injury that is redressable by this Court.

Defendant is correct that the expiration of a patent extinguishes any right to exclude future uses of

the invention.[10]  However, it does not become a mere nullity.  On the contrary, an otherwise-

valid-but-expired patent may still be used to enforce an inventor's rights against acts of

infringement that occurred during its normal statutory term.  *See* 35 U.S.C. § 286 (providing for

enforcement of a patent against infringers for up to six years after the infringement occurred); *In*

*re Morgan*, 990 F.2d 1230, 1232 (Fed. Cir. 1993) ("[A] patent does have value beyond its

expiration date . . . . [and] may be sued on after it expires.").  The effect of defendant's priority of

invention is that plaintiff's patent was *never* valid, and plaintiff may no longer sue to protect its

remaining patent rights.  This clearly harms plaintiff by removing its right to enforce its patent

against infringement that occurred while the patent was unexpired.

The United States Supreme Court has stated that a party's inability to enforce a right is an

ongoing harm sufficient to overcome a defense of mootness.  In *City of Erie v. Pap's A.M.*, the

Court considered a state-court decision declaring a public-nudity ordinance unconstitutional.  529

U.S. at 288.  The Court stated that "[t]he city has an ongoing injury because it is barred from

enforcing the ordinance's public nudity provisions.  If the ordinance is found constitutional, then

Erie can enforce it, and the availability of such relief is sufficient to prevent the case from being

moot.  *Id.*  The harm in the present case is analogous.  Plaintiff is currently barred from enforcing

---

[10] 35 U.S.C. § 154 grants the owner of a patent the right to exclude others from making, using, or selling
their invention for a fixed term of years.  *See* 35 U.S.C. §154(a) ("Every patent shall contain . . . a grant to the
patentee, his heirs or assigns, of the right to exclude others from making, using, offering for sale, or selling the
invention . . .).  "But these rights become public property once the [statutory] period expires."  *Brulotte v. Thys*
*Co.*, 379 U.S. 29, 31 (1964).  The patentee thereafter has no further right to enforce its patent against anyone using
the claimed invention.  *See id.*; *Scheiber v. Dolby Labs., Inc.*, 293 F.3d 1014, 1017 (7th Cir. 2002) ("After the
patent expires, anyone can make the patented process or product without being guilty of patent infringement.  The
patent can no longer be used to exclude anybody from such production.").

its patent against acts of infringement occurring with the statutory term of the patent.  Moreover, plaintiff's harm is redressable by this Court.  If plaintiff's patent is found to have priority, then it can be enforced.  The presence of such harm, and the availability of such relief, is sufficient to prevent the case from being moot.[11]

The constitutional analysis is bolstered by the presence of several prudential factors that weigh in favor of considering plaintiff's appeal.  First, the unique circumstances surrounding a review pursuant to § 146 militate against declaring the case moot at this stage in the proceedings. Normally, if a Court determines that it does not have jurisdiction over a case, the proper disposition would be to vacate the agency's decision.  *See Bancorp*, 513 U.S. at 23 ("A party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment."); *Air Trans. Ass'n*, 129 F.3d at 631 (vacatur of agency decision was proper because case was moot).  However, vacatur is not appropriate in every case.  "From the beginning we have disposed of moot cases in the manner most consonant to justice in view of the nature and character of the conditions which have caused the case to become moot."  *Bancorp*, 513 U.S. at 24 (internal citations and textual alterations omitted).  Because of the peculiar statutory scheme governing the interference process, vacatur appears to be an inappropriate remedy should the Court determine that the case is moot.[12]

---

[11] In *Erie*,  the finding of ongoing harm also turned on the fact that acceptance of the mootness plea would have resulted in dismissal of the petition, leaving intact the judgment below.  *See City News*, 531 U.S. at 279 (explaining *Erie*'s reasoning).  For reasons discussed below, the Court finds itself in an analogous situation here.

[12] As discussed above, the Federal Circuit has held that the BPAI should determine issues of patentability and priority even if there is no real "controversy" between the parties.  *Gartside*, 203 F.3d at 1317 (BPAI retained jurisdiction after a party cancelled all claims in the interference); *Guinn*, 96 F.3d at 1420-21 (BPAI retained jurisdiction after a party disclaimed all claims in the count).  Consistent with this, the BPAI here retained jurisdiction even after plaintiff's patent expired.  The parties have not identified—and the Court has been unable to locate—any case where a federal district court has vacated a decision of the BPAI on grounds of mootness on

Because the Court would not vacate the order to remove the harmful effect of an adverse judgment, there is further reason to consider the case here. *See City News*, 531 U.S. at 279 (stating that *Erie* turned in part on fact that finding of mootness would leave injurious judgment of lower court intact).

Second, as in *Erie*, "[h]ere it is the [party] who, having prevailed below, now seeks to have the case declared moot. And it is the [losing party] that seeks to invoke the federal judicial power to obtain this Court's review of the . . . decision." *Erie*, 529 U.S. at 288. The prejudice to plaintiff is especially strong here, because the BPAI rejected its prosecution laches argument partly on the assumption that plaintiff would be able to pursue this remedy in federal district court. (*See* Compl Ex. 6 at 31 n.90) ("Since judicial authority to decide patent prosecution laches is better established, our decision not to reach the issue should not foreclose [Siemens's] ability to pursue this remedy in a federal district court."). Accordingly, "[o]ur interest in preventing litigants from attempting to manipulate the Court's jurisdiction to insulate a favorable decision from review further counsels against a finding of mootness here." *Erie*, 529 U.S. at 288.

Defendant argues that the Court should follow *3V, Inc. v. CIBA Specialty Chems. Corp.*, 587 F. Supp. 2d 641 (D. Del. 2008), in determining that the case is moot. There, the district

---

appeal. *Cf. Capon v. Eshhar*, 418 F.3d 1349, 1351 (Fed. Cir. 2005) (considering an interference appeal involving an expired patent without commenting on mootness); *Human Genome Scis., Inc.*, 552 F. Supp. 2d at 474 (declining to moot a case in the absence of persuasive authority, given the unique nature of an interference proceeding); *3V*, 587 F. Supp. 2d at 648 (finding a case moot due to party's disclaimer but leaving judgment intact). A policy of vacatur would clearly nullify the BPAI's practice of retaining jurisdiction over expired patents, since any party could void that decision merely by appealing pursuant to § 146. Moreover, the public interest, which the Court must consider when contemplating vacatur, *Bancorp*, 513 U.S. at 26, would clearly be disserved by vacatur in this case. Because plaintiff's patent is expired, no new interference could be declared following these proceedings. *See* 35 U.S.C. § 154(a) (patent must be unexpired when interference is declared); *Albert v. Kevex Corp.*, 729 F.2d 757 (Fed. Cir. 1984) (interference proceeding pursuant to 35 U.S.C. § 293 presupposes two presently enforceable patents). Vacating the order would thus create a real risk that there would be two apparently valid patents for the same invention.

court found that a § 146 appeal was moot after one of the parties disclaimed all claims in the

disputed patent pursuant to 35 U.S.C. § 253. *Id.* at 645.[13]   That case is inapposite for several

reasons.  First, unlike a patent expiration, full statutory disclaimer wipes out all rights to enforce a

disclaimed patent, both prospectively and retrospectively. *See Guinn*, 96 F.3d at 1422 ("A

statutory disclaimer under 35 U.S.C. § 253 has the effect of canceling the claims from the patent

and the patent is viewed as though the disclaimed claims had never existed in the patent."); *3V*,

587 F. Supp. 2d at 645 (disclaimer eliminates "any meaningful interest" in a patent).  Here,

plaintiff would retain its ability to enforce the patent against acts of infringement that occurred

during the statutory term.  Second, the court's decision to dismiss the § 146 appeal in *3V* relied

on an analogy to 35 U.S.C. § 291, which allows a patent-holder to initiate an interference action

in district court. *See 3V*, 587 F. Supp. 2d at 646-47.  The Court does not find this analogy

persuasive.  Under 35 U.S.C. § 146, the district court functions as a quasi-appellate court for the

purposes of reviewing an agency decision. *Vas-Cath*, 473 F.3d at 1382.  As such, it is subject to

the unique rules of the administrative interference process.  In contrast, under 35 U.S.C. § 253,

the district court functions as a trial court and is subject to different rules and considerations.

*Compare, e.g.*, *Guinn*, 96 F.3d at 1420-21 (§ 135 prevents dismissal after disclaimer) *with Albert*,

729 F.2d at 760-61 (§ 253 mandates dismissal after disclaimer).  Because of these important

distinctions, the Court declines to follow *3V*.

　　　　For the foregoing reasons, the Court concludes that the case is not moot.  Defendant's

---

[13] Section 253 provides in relevant part:

A patentee, whether of the whole or any sectional interest therein, may, on payment of the fee required by law, make disclaimer of any complete claim, stating therein the extent of his interest in such patent. . . . In like manner any patentee or applicant may disclaim or dedicate to the public the entire term, or any terminal part of the term, of the patent granted or to be granted.

motion to dismiss for lack of subject-matter jurisdiction will therefore be denied.

**B.      The Motion to Dismiss for Failure to State a Claim**

Defendant next moves to dismiss several of plaintiff's claims under Fed. R. Civ. P. 12(b)(6).  In particular, defendant contends that two of the issues raised by plaintiff on appeal were not properly raised before the BPAI, and thus are not subject to review under § 146.

"In order for an issue to have been raised adequately so that it qualifies for consideration in a § 146 proceeding, the issue should have been raised as specified in the PTO's interference rules, for example, through preliminary motions, . . . miscellaneous motions, . . . or opposition to these motions." *Conservolite, Inc. v. Widmayer*, 21 F.3d 1098, 1102 (Fed. Cir. 1994).  "[M]ore is required than passing reference to the subject during the course of the interference proceeding." *Gen. Instrument*, 995 F.2d at 214.  However, even if a party has failed to comply with the rules, an "issue nevertheless could be deemed to have been raised for § 146 purposes if the record clearly demonstrates that it was placed before the [decision-maker] and one or more parties insisted that the issue be resolved in the interference." *Conservolite*, 21 F.3d at 1102; *see Gen. Instrument*, 995 F.2d at 214.

Under this standard, plaintiff's claims clearly survive a motion to dismiss.  Both contested issues were raised by plaintiff before the BPAI in the form of requests to file motions to that effect.  (Compl. ¶¶ 27-28, Ex. 5 at 3).  The BPAI, not plaintiff, decided not to authorize the motions.  (*Id.* Ex. 5 at 3).[14]  This is enough to deem an issue to have been raised for § 146 purposes, as the issue was placed before the decision-maker at the insistence of a party.  The

---

[14] The examiner also appears to have dispensed with the normal preliminary-motions phase in an attempt to expedite the interference process, further limiting plaintiff's opportunity to present its motions more fully.  (*See* Compl. Ex. 5 at 2).

outcome also accords with common sense, as it was the (now-challenged) action of the BPAI that prevented plaintiff from more fully briefing the issue below.

Accordingly, defendant's motion to dismiss for failure to state a claim will also be denied.

**III.**     **Conclusion**

For the foregoing reasons, defendant's motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6) is DENIED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
Dated:  May 5, 2011                                 United States District Judge